No. 20,629.

MARY EMMA HANNON, *Appellee*, v. THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF KANSAS, *Appellant*.

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*Unpaid Judgment—No Appeal Within Sixty Days—Application of Statute.* The statutory provision that any fraternal beneficiary association which fails to pay within sixty days an unappealed judgment against it 'shall be excluded from doing business in the state, which has been held to establish a sixty day limit for appeals by such an association, applies to domestic as well as to foreign corporations.

2. SAME—*Statute—Limiting Time to Appeal to Sixty Days—Not Repealed.* The section of the statute adopting the present code of procedure which repealed the former code and "all acts amendatory thereof and supplemental thereto," did not affect limitations upon the period within which certain actions may be brought, fixed by other statutes, not relating primarily to procedure, and not expressly amending or supplementing the general act on that subject.

3. SAME—*Unexplained Disappearance of Member — Presumption of Death.* The evidence is found to be sufficient to support a presumption of the death of a person, arising from his unexplained disappearance, followed by an absence of seven years during which nothing was learned of him, notwithstanding the diligent prosecution of inquiries.

4. SAME—*Disappearance of Member—Presumption of Death—By-laws of Association—Usual Rules of Evidence Control.* A by-law of a fraternal beneficiary association providing that "mysterious disappearance or unexplained absence of a member shall never be considered proof or evidence of death of such member" does not prevent the application of the usual rule as to unexplained absence under certain circumstances being sufficient to raise a presumption of death, in the trial of an action brought upon a certificate issued before its adoption.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed February 10, 1917. Dismissed.

*Edgar Bennett,* of Washington, for the appellant.

*Samuel Maher,* of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.:   Mary Emma Hannon recovered a judgment against the Grand Lodge of the 'Ancient Order of United Workmen of Kansas, upon a beneficial certificate issued to her husband, and it appeals.

1. The defendant is a fraternal beneficiary association, incorporated under the laws of this state.   Its appeal was not taken within sixty days after the rendition of the judgment, and the plaintiff moves to dismiss on that ground.   The statute provides that any such association "which shall fail to pay any judgment rendered against it in any court in this state, unappealed from, within sixty days of the rendition of such judgment, . . . shall be excluded from doing business within this state." (Gen. Stat. 1915, § 5413.)   This provision has been interpreted as requiring an appeal by such an association to be taken, if at all, within the time named, and as authorizing the dismissal of its appeal if perfected after that period. (*Modern Woodmen v. Heath*, 71 Kan. 148, 79 Pac. 1091; *Daughters of Justice v. Swift*, 73 Kan. 255, 84 Pac. 984.)   The defendant seeks to avoid this effect of the statute by contending that it applies only to foreign associations authorized to do business in this state. It has not heretofore been so regarded. The appellant in the case last cited was a Kansas corporation. The language used to describe the penalty imposed for a failure to comply with the requirement referred to—exclusion from doing business in the state—tends to suggest that a foreign rather than a domestic corporation was in the mind' of the draftsman of the act, and expressions which it elsewhere employs have a similar tendency.   But a consideration of the statute as a whole makes it clear that domestic corporations are covered by the provision under consideration, and by the other provisions of the same section, so far as they are in their nature applicable.   The second section of the act (Gen. Stat. 1915, § 5402) refers in terms to associations organized under the laws of this state, and the section requiring the payment of unappealed judgments within sixty days also contains a provision for an injunction against a company which violates that or any of the stated requirements, and adds that a receiver may be appointed "in case of a perpetual injunc-

tion allowed, under the provisions of this section, against an association incorporated under this act or other law of Kansas."

2. The defendant also maintains that inasmuch as the statute referred to was enacted in 1898 the portion of it requiring appeals by fraternal beneficiary associations to be taken within sixty days was annulled by the adoption of the present code, in 1909, containing a section repealing the former code of civil procedure, "and all acts amendatory thereof and supplemental thereto." (Civ. Code, § 755.) A number of statutory provisions, limiting the time within which certain actions shall be brought, are found outside of the code of procedure, such as that relating to the recovery of land sold for taxes (Gen. Stat. 1915, § 11,456) or those relating to injunctions against assessments for local improvements (Gen. Stat. 1915, §§ 1352, 1783, 1970). These provisions in a sense may be said to be amendatory of and supplemental to the code of procedure. But essentially they are independent enactments, and have been so treated. The existence of special limitations to be found elsewhere is recognized by the code itself. (Civ. Code, § 14.) And these special limitations are not subject to the exceptions provided in the code. (*Beebe v. Doster*, 36 Kan. 666, 14 Pac. 150.) Doubtless many statutes relating to substantial rights, and dealing with matters of procedure only incidentally, contain provisions that by necessary implication restrict the application of sections of the code, and may to that extent be said to amend or supplement them. But clearly the legislature had no thought of wiping out these special limitations and restrictions when it repealed the old code and "all acts amendatory thereof and supplemental thereto." Its obvious purpose was to install a new procedural system, complete in itself, and superseding all former legislation directed to that specific subject. The repeal reached all acts which expressly amended or supplemented the code, but not those which affected it only impliedly and incidentally.

3. Notwithstanding that the appeal was not taken within the prescribed time, the questions sought to be raised have been examined upon their merits. The plaintiff's case rests upon her claim to have shown that her husband had disappeared and had not been heard from for more than seven years,

under circumstances that warranted a presumption of his death, within the rule applied in *Modern Woodmen v. Gerdom,* 72 Kan. 391, 82 Pac. 1100, 77 Kan. 401, 94 Pac. 788, and *Caldwell v. Modern Woodmen,* 89 Kan. 11, 130 Pac. 642. The defendant maintains that the showing failed, chiefly because it did not appear that sufficient diligence had been exercised to trace and discover the missing person. We think there was evidence enough on that point, the details of which need not be stated, to take the case to the jury.

4. After the plaintiff's husband joined the defendant association it adopted a new by-law in these words:

"Mysterious disappearance or unexplained absence of a member shall never be considered proof or evidence of death of such member."

Complaint is made of the giving of this instruction regarding it:

"This by-law as far as it controls or governs the action of the A. O. U. W. in determining whether a member is dead, would be binding, but you are instructed that no by-law of the association can control or prevent the courts and juries from applying the usual rules of evidence in the trial of cases coming properly before them and in arriving at a verdict you are not bound thereby and may disregard the same."

The application for membership contained an agreement to comply with all laws, rules and regulations thereafter enacted by the order. The power of the association to make the by-law in question binding upon one who was already a member depends upon whether or not it was reasonable as applied to him. (*Uhl v. Life Association,* 97 Kan. 422, 155 Pac. 926.) If it were to be given effect in the trial of an action brought upon the beneficiary certificate previously issued to such a member, it would amount to a declaration of a rule of evidence to be applied by the court to the determination of a question of fact —a regulation of the amount and character of evidence by which such fact might be determined. It is one of the functions of a court, where the rights of the parties to a controversy turn upon a disputed matter of fact, to investigate and decide, for the purpose of that case, the question at issue. Its decision may be mistaken, but it is binding on the parties to the litigation because it is necessary that some final settlement of the disagreement should be had. That the probability of correctness may be increased rules of evidence, which ex-

47—99 KAN.

perience is thought to have shown to be salutary, have been established.  One of them is that the unexplained absence of a person for a period of seven years, during which time he has not been heard from, although inquiries concerning him have been diligently prosecuted, is sufficient to raise a presumption of death.  The courts do not assume to say. that mere absence or disappearance shall ever be given the effect of death, but that disappearance and absence for a fixed period, accompanied by certain other circumstances, may constitute *prima facie* evidence that death has actually taken place.  For the fraternal association to require a court to disregard that rule in  an action where  one of the issues is whether a member, to whom it had issued a certificate payable at his death, is living or dead, would be substantially to impose upon that tribunal a new method of procedure, much as though it were to direct that death was not to be regarded as having taken place unless it should be proved beyond a reasonable doubt, or by the testimony of witnesses who saw the corpse and identified it from personal acquaintance with the member.  We think such a regulation as applied to existing certificates is unreasonable, and therefore transcends the power of the association.

The rule as to the circumstances under which unexplained absence shall be deemed to raise a presumption of death is so well settled in this state as to have acquired substantially the force of a statute.  It has been declared and applied by the courts and acquiesced in by the legislature.  Where the rule has been confirmed by statute, by-laws similar to that here involved have been held inoperative as to certificates already in existence  (*Samberg v. K. O. T. M, M.,* 158 Mich. 568; *Sovereign Camp of Woodmen of the World v. Robinson,* [Tex. Civ. App.] 187 S. W. 215), and even as to those thereafter issued (*Supreme Ruling of Fraternal Mystic Circle v. Hoskins,* [Tex. Civ. App.] 171 S. W. 812; *Utter v. Insurance Co.,* 65 Mich. 545).

In the case last cited it was said:

"Courts will not permit the course of justice, upon trials before them, to be stipulated or contracted in such manner as to defeat the ends to be subserved by such trials.  The parties to the contract can not agree to oust the courts of jurisdiction over such contract.  The operation of this clause, requiring direct and positive proof, in many cases would, in

effect, preclude the court from jurisdiction and bar a recovery. If they can make this agreement, they can also stipulate that the evidence must come from certain persons, or make any agreement they see fit, controlling and directing the course of proceeding upon the trial. They may contract in relation to a condition precedent before bringing suit, or in relation to anything going to the remedy, but not to the right of recovery itself." (p. 554.)

Upon this principle it has been decided that a mutual insurance association may not by any regulation it can adopt restrict the right of the holder of an existing policy to sue upon it in any court to which the law gives him access. (*Eaton v. International Travelers' Ass'n,* [Tex. Civ. App.] 136 S. W. 817; *Nute v. Hamilton Mutual Insurance Company,* 72 Mass. 174.) In the case last cited the by-law appears to have been adopted prior to the making of the contract sued upon.

A by-law suspending a member of a fraternal benefit association who has disappeared, if he does not make known his whereabouts within a stated time, has been held to be enforceable against existing members (*Royal Arcanum v. Vitzthum,* 128 Md. 523), but that involves a different question.

A conclusion contrary to that we have reached was announced in *McGovern v. Brotherhood of Firemen and Engineers,* 31 Ohio Cir. Ct. Rep. (Ohio Cir. 1910) 243, but we are not satisfied with the reasoning employed. The cases there citied on this proposition did not involve any question of retroactive operation. Moreover, the petition in that case did not aver that the insured was dead, but merely set out the facts as to his absence for seven years. A by-law providing that a benefit association should not be liable for disability or death of a member resulting from the discharge of firearms, when there was no other witness thereto, was held valid as to existing certificates in *Moses v. Illinois Commercial Men's Ass'n,* 189 Ill. App. 440. But that decision appears to have been based largely upon the argument in *Roeh v. Protective Ass'n,* 164 Iowa, 199, where the by-law was in force when the certificate was issued.

In *Arnold v. Heptasophs,* 123 Md. 675, a by-law limiting the time within which an action might be brought was held to be enforceable even with respect to certificates already issued, but the question there discussed was whether the parties to a con-

tract can by an agreement incorporated therein shorten the statutory period of limitation, the authorities cited going no further than to indicate that this may be done. The right of a fraternal benefit association to fix a new time limit for actions on outstanding certificates was denied in *Rosenstein v. Court of Honor,* 122 Minn. 310; it was there stated, however, that so far as the record disclosed no notice of the change had ever been given, and neither the insured nor the beneficiary knew of it prior to the bringing of the action. In a later case the same rule was applied without reservation. (*Kulberg v. National Council,* 124 Minn. 437.)

The judgment is found to be sustainable upon the merits, but for the reason already stated the appeal is dismissed.